IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.:    5:11cr23/MW/GRJ
                                                      5:14cv138/MW/GRJ

JACK ALLEN KELLY,

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner's "Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in
Federal Custody," a Revised Memorandum of Law, and additional evidence
(ECF Nos. 560, 572, 574, 576.)    The Government has filed a response
(ECF No. 578) and Petitioner has filed a reply.    (ECF No. 581.)    The case
was referred to the undersigned for the issuance of all preliminary orders
and any recommendations to the district court regarding dispositive
matters.    *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed.
R. Civ. P. 72(b).    After a review of the record and the arguments
presented, the Court concludes that Petitioner has not raised any issue
requiring an evidentiary hearing and that the § 2255 motion should be
denied.    *See* Rules 8(a) and (b) Governing Section 2255 Cases.

## BACKGROUND

Petitioner was charged via a criminal complaint with a single count of knowingly and intentionally possessing with intent to distribute in excess of 500 grams of a mixture and substance containing methamphetamine. (ECF No. 1, 2.)   Four days later the Government filed an amended criminal complaint that broadened the date range of the offense.   (ECF Nos. 6, 7.)

On June 22, 2011, a federal grand jury returned a 16-count indictment charging Petitioner with conspiracy to distribute and possess with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine and 50 grams or more of methamphetamine (Count One); three counts of distribution and possession with intent to distribute methamphetamine (Counts Three, Five and Eleven); and a single count charging Petitioner with possession of a firearm by a convicted felon (Count Twelve).   (ECF Nos. 113, 114.) Represented by appointed counsel Tanya Higgins, Esq., Petitioner entered a not guilty plea on June 28, 2011 before Magistrate Judge Bodiford, (ECF No. 172).   Petitioner repeatedly expressed his desire to plead guilty, but

both the Court and counsel informed him that he would have to do so before United States District Judge Richard Smoak, rather than before Magistrate Judge Bodiford. (ECF No. 504 at 2-3.) Shortly thereafter Petitioner retained Steven Glazer, Esq., to represent him. (ECF Nos. 192-195.)

On August 2, 2011, the Government filed an Enhancement Information under 21 U.S.C. § 851, noting its intent to seek enhanced penalties under 21 U.S.C. § 841 due to Petitioner's prior drug conviction. (ECF Nos. 218, 223.)[1] Petitioner previously had been convicted in this Court of conspiracy to possess with intent to distribute methamphetamine and amphetamine in Case No. 5:99cr15/SPM, and sentenced to a term of 60 months imprisonment. (ECF No. 223-1 at 2.) The Government's notice provided that as a result of Petitioner's prior conviction, he would be subject to a mandatory minimum of twenty years' imprisonment on Count One, and a maximum of thirty years' imprisonment on Counts Three, Five and Eleven. (*Id.*)

---

[1] These appear to be identical copies of the same document.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

Two days later, on August 4, 2011, Petitioner entered a guilty plea before Judge Smoak as to Counts One and Twelve of the indictment pursuant to a written plea and cooperation agreement and statement of facts. (ECF Nos. 228, 229, 230, 450.) Counts Three, Five and Eleven were dismissed on the Government's motion. (ECF Nos. 230, 231.) The written plea agreement, which was signed two days after the Government filed the Enhancement Information, did not acknowledge the existence of the enhancement in any fashion. The plea agreement simply provided that Petitioner faced a mandatory minimum of ten years imprisonment up to a maximum of life imprisonment as to Count One and a maximum term of ten years imprisonment as to Count Twelve. (ECF No. 228 at 1.)

At the change of plea hearing the court asked Petitioner whether he knew that, as to Count one, "the Government has provided notice that it may seek an enhanced sentence because of your prior felony conviction." (ECF No. 450 at 7.) Petitioner responded "Yes, sir." (ECF No. 450 at 8.) The Court then advised Petitioner about the difference in the sentence he faced, depending on whether the enhancement applied. The Court explained that with the enhancement, Petitioner was subject to a

mandatory minimum term of twenty years in prison on Count One, but that

if an enhanced sentence was not appropriate, he would face a mandatory

minimum term of ten years in prison.    (*Id.*)    The court also informed

Petitioner that he faced a maximum term of ten years imprisonment on

Count Twelve.    (*Id.*)    After stating the possible sentences, the court

specifically and directly asked if Petitioner understood that the sentence he

faced depended upon whether his sentence was enhanced.    He

responded that he did. (*Id.*)    Petitioner agreed that the agreement

represented his entire agreement with the Government and that there were

no secret or undisclosed promises.    (ECF No. 450 at 12.)    Counsel also

specifically assured the Court that he had discussed the enhancement

information with his client and shown it to him, and that Petitioner

understood it.    (ECF No. 450 at 13-14.)[2]    No one directed the Court's

attention to the fact that the plea and cooperation agreement did not

mention the enhancement, and neither party made any objection to either

---

[2] Counsel noted Petitioner's understanding that there was the possibility of a 5K1. (ECF No. 450 at 14).    The possibility of a 5K1 discredits the advice Petitioner claims to have received from a jailhouse lawyer that he had "absolutely nothing to lose putting the Government to its burden of proof at trial."    (ECF No. 574 at 4.)    Petitioner could not have simultaneously contested his guilt and cooperated with the Government. Ultimately, Petitioner did not receive the benefit of either a 5K1 or Rule 35 motion.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

this omission or the discussion of the enhancement. And, Petitioner did

not advise the Court of what he now claims, that he understood that his

sentence would not be enhanced if the court accepted the plea agreement.

(ECF No. 574 at 6.)

The Final Presentence Investigation Report ("Final PSR") used at

Petitioner's October 19, 2011, sentencing reflected a total offense level of

31 and a criminal history category of II. (ECF No. 308.) This report also

reflected a minimum term of imprisonment of 20 years as to Count One and

a maximum term of imprisonment of 20 years as to Count Twelve.[3] (ECF

No. 308, Final PSR at ¶¶ 211-212.) The statutory minimum trumped the

applicable guideline range of 121 to 151 months, and the court sentenced

Petitioner to a term of 240 months imprisonment as to each count, to run

concurrently. (ECF Nos. 353, 354; ECF No. 451 at 14.)

Petitioner filed a timely notice of appeal on October 31, 2011, and

CJA attorney Barbara Sanders was appointed to represent him. On

February 14, 2012, he filed an unopposed motion for relinquishment of

jurisdiction and remand for resentencing because the statutory maximum

---

[3] Neither attorney brought this error in the statutory maximum to the attention of the court at the time.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

sentence for Count Twelve was ten years, as had been stated at Petitioner's change of plea, not the twenty year term reflected in the PSR. On March 27, 2012, the Eleventh Circuit vacated Petitioner's sentences and remanded for resentencing.   (ECF No. 507.)   The remand order left to the district court's discretion "[t]he decisions as to whether to conduct a resentencing hearing and as to the scope of the hearing."   (ECF No. 507 at 1.)

Ms. Sanders continued to represent Petitioner before the district court after remand.   (ECF No. 508.)   The Probation Office prepared a second revised Final Presentence Investigation Report, which corrected the error in the statutory maximum sentence as to Count Twelve.   (ECF No. 509, Second Final PSR ¶¶ 212, 213).   Petitioner filed numerous objections and argued that a full sentencing hearing was necessary to consider multiple issues, including whether the sentencing enhancement should apply to him in light of the omission of any reference to it in the plea agreement.   (*See* ECF No. 522, Third Final PSR ¶ 250.)   The Court scheduled the case for resentencing.   (ECF No. 517.)

At resentencing, the defense argued that the Court was not bound by the enhanced statutory minimum because the written terms of the plea agreement did not mention the possible enhancement.   (ECF No. 539 at 3-9.)[4]   The Government, on the other hand, characterized the omission of the enhancement language from the plea agreement as a "typographical error," and noted that the issue had not been raised previously, either at the initial sentencing or on appeal.   (ECF No. 539 at 12.)   AUSA Littleton argued that "no one was every under any impression that the Government was going to do anything but file an enhancement information" in light of Petitioner's prior federal methamphetamine conviction.   (*Id.*)   Defense counsel Ms. Sanders objected to this, stating that she was there "on a contract case" and that parole evidence should not be used to vary the terms of the contract.   (ECF No. 539 at 13.)   The court reviewed the plea colloquy and the contents of the PSR, and the parties agreed that there was no dispute that the enhancement was legally appropriate.   In light of the lack of prior objection, the Court declined to revisit the application of the

---

[4] Counsel did not present the contention that Petitioner now makes, that his prior attorney, Mr. Glazier, had specifically told him that if the court accepted the plea agreement that the enhancement would not apply.   (ECF No. 574 at 6.)

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

enhancement, and it rejected defense counsel's argument that the omission meant the enhancement was "withdrawn in the plea agreement." (ECF No. 539 at 20-21.)   The Court stated that the mere fact that the enhancement was not included in the written document was insufficient as "something more than just silence" would be required to properly withdraw it.   (ECF No. 539 at 21.)   The Court sentenced Petitioner to a term of 240 months as to Count One and 120 months as to Count Twelve, to be served concurrently.   (ECF No. 539 at 42.)

After the court pronounced Petitioner's revised sentence, the Government asked for record clarification about what Petitioner's sentence might be if the enhancement were found to be inapplicable for any reason. (ECF No. 539 at 46.)   The Court stated that it could not think of any reason that the sentence, which was appropriate when taking into account the § 3553 factors, would change, but then stated that it was more prudent not to speculate and engage in hypotheticals.   (ECF No. 539 at 47-48.)

Petitioner appealed a second time, still represented by Ms. Sanders. He argued that the district court was mistaken when it concluded that the plain language of the plea agreement allowed the Government to seek a

sentencing enhancement on his drug conspiracy charge and when it failed

to sentence him below the statutory maximum on Count Twelve, the gun

charge.   (ECF No. 549 at 2.)   The Eleventh Circuit found no error in the

application of the § 851 enhancement.   The Eleventh Circuit panel stated

that "[n]othing in Kelly's plea agreement relieved the district court of its

statutory obligation to impose the mandatory minimum sentence, nor could

it."   (ECF No. 549 at 8, n. 2, citing *United States v. Clark*, 274 F. 3d 1325,

1328 (11th Cir. 2001).)   The court further stated that there was nothing in

the plea agreement that would have made it reasonable for Kelly to believe

that he would not be subject to the § 851 enhancement, if the court

determined the information in the enhancement information was accurate.

(ECF No. 549 at 8, n2.)   The Eleventh Circuit noted that this was so

"because Kelly's plea agreement never mentioned the previously filed

enhancement notice but instead expressly provided for the possibility of

'any mandatory minimum sentence prescribed by statute for the offense,'"

and the agreement also included an integration clause providing that there

were no other agreements between the parties.   (*Id., citing United States

v. Al-Arian*, 514 F.3d 1184, 1192-93 (11th Cir. 2008).)   The Eleventh

Circuit also found that Petitioner's guideline sentence on Count Twelve was substantively reasonable.   (ECF No. 549 at 10.)

Petitioner timely filed a motion to vacate raising two claims related to the application of the enhancement.   As relief, he seeks resentencing without the § 851 enhancement.   The Government opposes the motion.

## ANALYSIS

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental

miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*,

365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr*.,

611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish

"that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting

*Strickland*, 466 U.S. at 687).   Or in the case of alleged sentencing errors,

a defendant must demonstrate that there is a reasonable probability that,

but for counsel's errors, the result of the proceeding would have been less

harsh due to a reduction in the defendant's offense level.   *Glover v. United

States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is

not required to establish prejudice, as "any amount of actual jail time has

Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual

support for his contentions regarding counsel's performance.   *Smith v.

White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson

v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Furthermore, counsel is not constitutionally deficient for failing to preserve

or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342

(11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d

1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue

is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of

Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve

meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v.

United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not

ineffective for failing to make a meritless objection to an obstruction

enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002)

(counsel was not ineffective for failing to raise issues clearly lacking in

merit).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

### *Petitioner's claims for relief*

As noted *supra*, both of Petitioner's claims relate to the application of the § 851 enhancement.   First, he argues that trial counsel Steven Glazer was constitutionally ineffective because he did not argue either that the district court modified the plea agreement by applying the enhancement, or that the Government breached the plea agreement by acquiescing to the alleged modification.   Next he argues that appellate counsel was constitutionally ineffective because she did not make these arguments on appeal.

The Government responds that Petitioner is merely attempting to attack the application of the § 851 enhancement, the propriety of which was already unequivocally approved by the Eleventh Circuit on appeal.   The Government further maintains that even if the precise issues Petitioner raises were not determined on direct appeal, neither defense attorney acted in an objectively unreasonable manner, and Petitioner was not prejudiced.   The Government asserts that at the plea hearing all parties were fully aware that the enhancement applied, and therefore the plea agreement was neither breached nor modified.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

In his reply, Petitioner insists that the arguments he now raises are different from those resolved on direct appeal. He seeks to challenge the effectiveness of his counsel in the manner in which counsel raised, or did not raise, the propriety of the enhancement. *See Gerrow v. United States*, 140 F. App'x 182, 183 (11th Cir. 2005) (litigant may challenge the effectiveness in which counsel litigated a matter on direct appeal). Petitioner contrasts his constitutional claim that the plea agreement had been modified and breached in violation of the Fifth Amendment Due Process Clause with the statutory/jurisdictional claim decided by the appellate court. (ECF No. 581 at 4.) He also maintains that the Eleventh Circuit's statement with respect to the district court's statutory obligation to impose the mandatory minimum sentence was nothing more than pure dictum and does not control the outcome of this motion. (ECF No. 581 at 5; ECF No. 549 at 8 n.2.)

In deciding this case the Court must consider first, whether Petitioner's claims were resolved on direct appeal as claimed by the Government. Petitioner's plea agreement contained a clause stating that the parties agreed that "the District Court's discretion in imposing sentence

is limited only by the statutory offense maximum sentence and any

mandatory minimum sentence prescribed by statute for the offense."

(ECF No. 228 at 2.)   The Eleventh Circuit cited this clause and noted that

the agreement also contained an integration clause stating that there were

no other agreements between the parties.   (ECF No. 549 at 8 n.2; ECF

No. 228 at 5).   Petitioner argues that this language cannot be used to

supplant or obviate the Government's obligation under contract law and the

Due Process Clause to include the § 851 enhancement in the plea

agreement.   (ECF No. 228 at 7.)   He also notes that the "any mandatory

minimum sentence" language is "boilerplate" language the Government

uses in every plea agreement, and cites the plea agreements of his

codefendants as examples.   (*See* ECF Nos. 203, 207, 233, 238, 253, 258,

262, 267, 330.)   The mere fact that something is "boilerplate" language

does not render it meaningless or ineffectual.   To the extent Petitioner

disagrees with the Eleventh Circuit's analysis of his claim on appeal, a

motion under 28 U.S.C. § 2255 is not the proper vehicle for challenging

such.   Nonetheless, the court concurs that, while the propriety of the

enhancement was considered on appeal, the precise claims raised in the

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

instant motion were not. Therefore, the court must consider whether either Mr. Glazer or Ms. Sanders or both were constitutionally ineffective in the manner in which each chose to handle the matter of the enhancement.

Petitioner claims that the performance of attorney Glazer, who represented him at the plea and sentencing, was patently unreasonable. Petitioner attempts to prove the "modification" of the agreement by explaining his understanding of the proceedings. Mr. Glazer allegedly conveyed to Petitioner that the omission of the § 851 language from the plea agreement was the direct result of a fruitful negotiation between him and AUSA Littleton. (ECF No. 581 at 10.) Mr. Glazer also told Petitioner that if the district court accepted the plea agreement that it could not enhance his sentence pursuant to § 851. (ECF No. 574 at 6.) As such, Petitioner states that he reasonably understood from the omission of the enhancement that he would not be subject to a mandatory minimum of twenty years imprisonment. (ECF No. 581 at 10.) The Court concludes that such an understanding is not reasonable under the circumstances of this case. Petitioner had been in federal court before, and he has demonstrated himself to be intelligent and articulate throughout the

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

proceedings.   If he was entering his plea based on a belief that the court would not impose an enhanced statutory mandatory minimum, it defies reason that he would not have raised questions about this at the plea colloquy.   Despite the court's numerous references to the possible enhancement, Petitioner never objected or asked for clarification.

In a further attempt to bolster his position, Petitioner focuses on the court's specific choice of the word "may" during the colloquy.   Specifically, the court stated that the Government had provided notice that it "may seek an enhanced sentence."   He surmises that this meant that the Court was unsure of whether the Government still intended to pursue an enhancement because reference to the enhancement was not included in the plea agreement.   (ECF No. 581 at 11.)   This conclusion is pure speculation.   If the Court had noticed the omission of the § 851 enhancement from the written document, there is no reason it would not have been specifically mentioned.   More significantly, this argument contradicts Petitioner's proferred understanding as set forth in his affidavit that his sentence "could not" be enhanced if the court accepted the plea agreement.   (ECF No. 574 at 6.)

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

Petitioner maintains that an unqualified integration clause[5] precludes any claim by a defendant that an agreement or understanding existed between the parties that was not memorialized in the plea agreement itself, irrespective of what his unrefuted understanding was. *Al-Arian,* 514 F.3d at 1193. Although Petitioner claims *Al-Arian* supports his position, the holding applies with equal, if not greater, force to refute his claim. The fact that the § 851 enhancement was not mentioned in the agreement was not proof that the parties had separately agreed that it would not apply.

Petitioner claims that he was prejudiced by Glazer's performance because had he objected, Petitioner would have been sentenced without the enhancement. (ECF No. 581 at 15.) That is clearly not so. The more likely scenario, if there had been an objection, is that the Court would have considered allowing Petitioner to withdraw his plea. However, in light of Petitioner's cooperation from "virtually the minute he was arrested" and his cooperation with law enforcement, he potentially had a lot to lose by going to trial, contrary to the advice allegedly provided by the "jailhouse lawyer"

---

[5] The integration clause in *Al-Arian* stated that the "plea agreement constitutes the entire agreement between the government and the defendant ... and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea." *Al-Arian*, 514 F. 3d at 1187.

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ

referenced in Petitioner's affidavit. (ECF No. 574 at 4; ECF No. 451 at 10-11.) Had Petitioner put the Government to its burden of proof at trial, he was all but guaranteed not to receive a substantial assistance motion. Notwithstanding the fact that the Rule 35 did not ultimately come to fruition, in light of his cooperation, Petitioner faced a greater sentencing risk by going to trial.

Further weakening Petitioner's claim that the plea agreement was modified or breached is the fact that when Petitioner was given the opportunity to address the Court at sentencing, which he did at length, he made no mention of his alleged understanding that the enhancement would not apply. (ECF No. 451 at 3-4, 8-10.) Petitioner's after the fact comparison of specific language used during his plea colloquy vis-à-vis that of his co-defendants in order to establish what he knew at the time is not persuasive. Finally there is nothing in the record that suggests he told his subsequent attorney, Ms. Sanders, about his "understanding" of the plea agreement. Ms. Sanders never broached this topic with the Court, and Petitioner has not complained of her failure to do so.

While the Government admittedly failed to incorporate specific reference to the enhancement in the written plea agreement, Petitioner has not established constitutionally deficient performance under *Strickland*. Petitioner was told by the Court that he faced a possible enhanced sentence and what the minimum mandatory sentence would be under the enhancement. Petitioner was hoping to receive the benefit of a substantial assistance motion, and in fact, his failure to receive a 5K1 motion was the subject of his initial appeal. (*See* ECF No. 549 at 4.) The record neither factually nor legally supports Petitioner's assertion that his plea agreement was either breached or modified. He has not shown that he was prejudiced by attorney Glazer's failure to object, as counsel is not constitutionally deficient for failing to make a meritless objection. *See, e.g., Denson*, 804 F.3d at 1342 (citing *Freeman*, 536 F.3d at 1233; *Lattimore*, 345 F. App'x at 508; *Brownlee*, 306 F.3d at 1066; *Jackson*, 42 F.3d at 1359; *Winfield*, 960 F.2d at 974.

Petitioner also faults the performance of Ms. Sanders. Ms. Sanders, represented Petitioner on direct appeal, upon resentencing, and again on appeal after resentencing. Unlike Mr. Glazer, who did not raise the issue

of the Government's omission of the § 851 enhancement from the written plea agreement, Ms. Sanders argued vigorously in her client's behalf. She sought to have the enhancement issue revisited at resentencing as well as challenging the application of the enhancement on appeal. The fact that her hard-fought arguments were unsuccessful does not render her performance constitutionally ineffective. Regardless of whether a different attorney might have made a different argument and achieved a different outcome, the Court cannot say that no reasonable lawyer would have acted in the circumstances as Ms. Sanders acted. *See Dingle*, 480 F.3d at 1099; *Williamson*, 221 F.3d at 1180. Nor was her approach 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams*, 709 F.2d at 1445). In short, Petitioner has not shown constitutionally deficient performance under *Strickland*.

Conclusion

For all of the foregoing reasons, the Court finds that Petitioner has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor

has he shown that an evidentiary hearing is warranted.   Therefore

Petitioner's motion should be denied in its entirety.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings

provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of

appeal must still be filed, even if the court issues a certificate of

appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of

the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529

U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the

final order, the court may direct the parties to submit arguments on whether

a certificate should issue."   If there is an objection to this recommendation

by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.	The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 560) should be **DENIED**.

2.	A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 5th day of June, 2017.


*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case Nos.: 5:11cr23/MW/GRJ; 5:14cv138/MW/GRJ